IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JOHN A. JENNINGS                                                                         PETITIONER

v.                                         NO. 2:05CV00209 HDY

LINDA SANDERS, Warden, FCI                                                       RESPONDENT
Forrest City, Arkansas

MEMORANDUM OPINION AND ORDER

BACKGROUND. Petitioner John A. Jennings ("Jennings") represents that in April of 2004, he was sentenced to twenty-four months in the custody of the Federal Bureau of Prisons ("BOP") following his plea of guilty to wire fraud. Following his sentencing, he came to be incarcerated at FCI Forrest City in Forrest City, Arkansas.

FEDERAL COURT SUBMISSIONS. In August of 2005, Jennings commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He alleged the following in his petition:

> Jennings is scheduled for transfer to a Community Corrections Center (CCC) on or about January 15, 2006, which would only permit Jennings about 2 months of CCC confinement. However, Jennings has requested that he be considered for additional CCC placement time, citing that his individual needs and circumstances require consideration for up to six months of CCC placement. Jennings could be placed in CCC on or before September 30, 2005. …

> Respondent has denied his request, citing a new Bureau of Prisons (BOP) policy which took effect on February 14, 2005 in which inmates will only be permitted to serve the final ten percent (10%) of their sentences in a CCC. …
>
> …
>
> Jennings is entitled to consideration for six months CCC placement, based upon his individual needs and circumstances, as the BOP has an obligation to assure that Jennings is given ample opportunity to re-adjust in a truly meaningful way, back into his respective community, rather than to just arbitrarily apply a blanket 10% CCC policy.
>
> In short, the BOP's policy, which took effect on February 14, 2005, is no different than the policy which the BOP promulgated on December 16, 2002. This is true, even if the BOP has now complied with the provisions of the APA in the making of its new policy. The BOP's new policy has no effect, and no impact on the Eight Circuit['s] ruling as set forth under Elwood.

See Document 1 at 2-3, 5-6. Jennings additionally noted in his petition that he should be excused from exhausting his administrative remedies because the administrative process would not be completed until after he expects to become eligible for entry into a community corrections center ("CCC").

Respondent Linda Sanders ("Sanders") thereafter filed an answer to Jennings' petition. She maintained that he failed to state a claim for relief because he has no constitutional right to a place of incarceration. She also maintained that he failed to state a claim for relief because the CCC placement policy adopted by the BOP is consistent with the relevant statutes and case law and is a permissible interpretation of 18 U.S.C. 3621(b) and 18 U.S.C. 3624(c).

Jennings subsequently filed a reply to Sanders' submission. He alleged in sum that he was seeking a CCC placement for "a period of not less than six months at the conclusion of his sentence, ... See Document 7 at 7. In his reply, he also made a request for an expedited disposition that the Clerk of the Court has construed as a motion for expedited disposition.

PRELIMINARY MATTERS. Before addressing Jennings' petition, the Court makes note of three preliminary matters. First, he is challenging the BOP's interpretation of 18 U.S.C. 3624(c) and, in turn, the decision of the BOP to delay his entry into a CCC. The Court is convinced that his challenge involves a challenge to the execution of his sentence. He has therefore properly filed his petition pursuant to 28 U.S.C. 2241.

Second, a prisoner is typically required to exhaust his administrative remedies before filing a petition pursuant to 28 U.S.C. 2241. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). The requirement is capable of being waived, though, when a prisoner can show that attempting to exhaust would be futile. The Court finds that requiring Jennings to exhaust his administrative remedies would be futile. Specifically, the BOP has taken a clear, consistent, and widespread stand against Jennings' position.

Third, Jennings represents that he is scheduled for transfer to a CCC "on or about January 15, 2006, which would only permit [him] about [two] months of CCC confinement." See Document 1 at 2. For purposes of this Memorandum Opinion and Order, the Court accepts his representation as true.

<u>BOP POLICY CHANGES AND RESULTING LITIGATION</u>.   The proceeding at bar is better understood when placed in a larger context, a context that involves at least two changes to the BOP's CCC placement policy.  Prior to December of 2002, the BOP had a policy of "allowing [a] prisoner[] to serve [the] last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised."  See <u>Elwood v. Jeter</u>, 386 F.3d 842, 844 (8th Cir. 2004).  This policy was particularly favorable to a prisoner with a relatively short sentence, like Jennings, because the policy allowed the prisoner to serve a significant portion of his sentence in a CCC.

In December of 2002, the Department of Justice's Office of Legal Council ("OLC") issued a memorandum opinion that provided, in part, the following: "[w]hen [a prisoner] has received a sentence of imprisonment, the [BOP] does not have general authority ... to place such [prisoner] in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time [the] BOP chooses during the course of his sentence."  See <u>Cohn v. Federal Bureau of Prisons</u>, 2004 WL 240570 at 1 (S.D.N.Y. 2004).  "[The] OLC [therefore] concluded that [the] BOP could no longer place [a prisoner] in [a CCC] to satisfy a prison term, except that, pursuant to 18 U.S.C. § 3624(c), [the] BOP could do so at the end of [a prisoner's] sentence for the <u>lesser</u> of (i) the last ten percent of the sentence or (ii) six months."  See <u>Cato v. Menifee</u>, 2003 WL 22725524 at 1 (S.D.N.Y. 2003).  [Emphasis in original].  Shortly thereafter, the BOP announced that it would adhere to the OLC's memorandum opinion.

-4-

The United States Court of Appeals for the Eighth Circuit addressed the OLC's December of 2002 memorandum opinion and the BOP's application of the memorandum opinion in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004). In that decision, the Court of Appeals determined that the OLC's memorandum opinion was erroneous and that the BOP has the discretion to place a prisoner in a CCC at any time during his incarceration. The Court of Appeals determined that the BOP is not limited by the provisions of 18 U.S.C. 3624(c); instead, that statute imposes a duty on the BOP to take steps to facilitate a prisoner's re-entry into the outside world. That duty, though, was not to extend beyond the last six months of the prisoner's sentence.

In response to Elwood v. Jeter, the BOP adopted a new CCC placement policy on February 14, 2005 ("the February 14, 2005, policy"). The relevant portions of the February 14, 2005, policy provided as follows:

> **570.20.  What is the purpose of this subpart?**
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

> 570.21.  When will the Bureau designate inmates to community confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority ...

The BOP thus acknowledged in the policy that it had the discretion to place a prisoner in a CCC prior to the last ten percent of the sentence being served.  The policy reflects, however, that the BOP would exercise its discretion, in advance, by limiting CCC confinement in every instance to the last ten percent of the sentence being served.

The February 14, 2005, policy spawned a significant amount of litigation, including much litigation within this district.  In July of 2005, United States District Judge George Howard, Jr., addressed a challenge to the policy in <u>Fults v. Sanders</u>, 2:05CV00091.  He found that the policy was invalid because although it purported to be a "categorical exercise of discretion," it was actually not.  "It merely repackaged the December 2002 blanket rule that was rejected in <u>Elwood</u>."  See <u>Fults v. Sanders</u>, 2:05CV00091, Document 6 at 8.

The undersigned has also had several occasions to address the February 14, 2005, policy.  In every instance, the undersigned has followed Judge Howard's lead and found that the policy was invalid.  The undersigned will do likewise in this proceeding.

CONCLUSION AND REMEDY. Given the foregoing, the Court finds that the February 14, 2005, policy is invalid. Jennings' petition for writ of habeas corpus is granted. Sanders is ordered to: (1) consider, within twenty days and in good faith, transferring Jennings to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to the adoption of the OLC's December of 2002 memorandum opinion; and (2) place Jennings in conditions that will afford him a reasonable opportunity to adjust to, and prepare for, his re-entry into the community during a reasonable part of the last ten percent of his terms, to the extent practicable, not to exceed six months.[1] His motion for expedited disposition is denied.

IT IS SO ORDERED this __13__ day of October, 2005.

*H Daniel Young*
_____
UNITED STATES MAGISTRATE JUDGE

---

[1] In light of the fact that the petition has been granted, there is no need to address any of Jennings' remaining arguments.